1  RON SUNG, ESQ.
   Nevada State Bar No. 13047
2  I. KRISTINE BERGSTROM, ESQ.
   Nevada State Bar No. 10841
3  Nevada Legal Services, Inc.
   530 South Sixth Street
4  Las Vegas, Nevada 89101
   (702) 386-0404 x148
5  Facsimile (702) 388-1641
   *Attorneys for Norma Arias Benitez*

6

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

7

8  UNITED STATES OF AMERICA                    CASE NO.: 2:15-cv-01688-LDG-NJK
   *ex rel.* NORMA ARIAS BENITEZ, Relatrix,

9
          and                                 **PLAINTIFF'S RESPONSE TO**
10                                            **DEFENDANTS' MOTION FOR RELIEF**
   NORMA ARIAS BENITEZ,                       **FROM JUDGMENT**
11
          Plaintiffs,
12
          v.
13
   GALLIANO, LLC, a Nevada Corporation,
14 and GOLDEN RIVER INVESTMENTS,
   LLC, a Nevada Corporation, d/b/A GOLDEN
15 RIVER REALTY,

16        Defendants.

17 GOLDEN RIVER INVESTMENTS, LLC,

18        Counter-Plaintiff,

19        v.

20 NORMA ARIAS BENITEZ,

21        Counter-Defendant.

22        Relatrix and Plaintiff, NORMA ARIAS BENITEZ (hereinafter "Relatrix") hereby files

23 her Response to the August 10, 2018, Motion to for Relief from Judgment filed by Defendant

24

GOLDEN RIVER INVESTMENTS, LLC,[1] and joined by Defendant GALLIANO, LLC, on August 14, 2018.[2]

This Response is supported by the pleadings, papers and other records on file, the following Memorandum of Points and Authorities, any exhibits attached thereto and any further evidence and argument this Court may entertain at the time of hearing this matter.

DATED this 24th day of August 2018.

Respectfully Submitted,

/s/ Ron Sung
RON SUNG, ESQ.
Nevada State Bar No. 13047
I. KRISTINE BERGSTROM, ESQ.
Nevada State Bar No. 10841
Nevada Legal Services, Inc.
530 South 6th Street
Las Vegas, Nevada 89101
(702) 386-0404 x148
Facsimile (702) 388-1641
*Attorneys for Norma Arias Benitez*

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      **INTRODUCTION**

Defendants' Motion alleges newly discovered evidence should require the Court to overturn its January 26, 2018 Order granting partial summary judgment in favor of Relatrix. Defendants' Motion also alleges fraud, misrepresentation, and misconduct by the Southern Nevada Regional Housing Authority ("SNRHA") and Relatrix's counsel. To note, this is now Defendants' second motion to change the Court's Order granting partial summary judgment: Defendants filed a Joint Motion to Alter or Amend Judgment on February 22, 2018 making

---

[1] Dkt. #83.
[2] Dkt. #85.

similar arguments regarding the materiality issue of the False Claims Act ("FCA"),[3] which the Court denied on February 28, 2018 before Relatrix even filed a response.[4]

The Court, however, correctly decided the case on January 26, 2018, in finding a material breach by Defendants in violation of the FCA regardless whether the Court admits the newly discovered evidence. Moreover, Defendants lack basis in law and fact in alleging SNRHA and Relatrix committed fraud, misrepresentation, or misconduct. Accordingly, the Court should deny Defendants' Motion for Relief from Judgment.

II.    **REQUEST FOR JUDICIAL NOTICE**

Fed. R. Evid. 201(b) states, "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Defendants cite *U.S . v. Rutgard*, 116 F.3d 1270, 1278 (9th Cir. 1997) to request the Court take judicial notice of the Las Vegas Review Journal article, but the *Rutgard* court actually rejected a request to take judicial notice of newspaper articles to be entered into the record.[5] In general, information reported in the newspapers, by itself, is normally insufficient for judicial notice of a fact which is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" under FRE 201(b)(2).[6] Courts may take judicial notice of publications introduced to "indicate what was in

---

[3] Dkt. #71.

[4] Dkt. #72.

[5] 116 F.3d 1270, 1278-79 (9th Cir.1997).

[6] See generally Cofield v. Alabama Public Service Commission, 936 F.2d 512, 517 (11th Cir. 1991) ("That a statement of fact appears in a daily newspaper does not of itself establish that the stated fact is 'capable of accurate and ready determination'").

the public realm at the time, not whether the contents of those articles were in fact true."[7] In this case, Defendants request the Court to take judicial notice of content in the Las Vegas Review Journal article, but the article did not exist until after the Court ordered partial summary judgment and the content of the article was presumably not public knowledge until publication. In addition, Defendants have other means to question the individuals quoted in the article. Therefore, the Court should deny taking judicial notice of the Las Vegas Review Journal article.

III.   **STANDARD OF REVIEW**

Fed. R. Civ. Pro. 60(b) allows the Court to relieve a party from an order based on (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time . . ." or (3) based on fraud, misrepresentation, or misconduct by an opposing party. L.R. 59-1(a) states, "A party seeking reconsideration under this rule must state with particularity the points of law or fact that the court has overlooked or misunderstood." L.R. 59-1(b) further states,

> Motions for reconsideration are disfavored. A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts. A movant who repeats arguments will be subject to appropriate sanctions.

IV.   **ARGUMENT**

A.   ADMISSION OF NEWLY DISCOVERED EVIDENCE

For Defendants to prevail on a motion under Fed. R. Civ. Pro. 60(b)(2), Defendants must show the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have

---

[7] *Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1022 (9th Cir. 2009) (citing *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2001)).

been likely to change the disposition of the case.[8] Newly discovered evidence under Rule 60(b)(2) excludes evidence that was not in existence at the time of the judgment.[9]

Defendants contend there is new evidence that "SNRHA routinely refused to enforce violation of 'side payment' prohibition."[10] Defendants misconstrue their own citation: the Las Vegas Review Journal article merely stated SNRHA failed to investigate illegal side payment claims.[11] Moreover, if Defendants wanted to learn whether SNRHA previously failed to investigate or enforce the illegal side payment policy, Defendants could have easily obtained this information via discovery. After all, Defendants deposed Brenda Fonseca, the person most knowledgeable for SNRHA, on August 5, 2016.[12] In addition, Relatrix's attorneys from Nevada Legal Services have previous litigated several other illegal side payment cases similar to this one as a matter of public record; in fact, Relatrix's pleadings consistently cited to decisions from *United States ex rel. Holmes v. Win Win Real Estate, Inc.,*[13] and *United States ex rel. Mathis v. Mr. Property, Inc.,*[14] where Nevada Legal Services represented other Section 8 tenants within the jurisdiction of SNRHA. Defendants knew or shown have known this matter was not the first illegal side payment case in SNRHA's jurisdiction. Defendants' failure to ask the questions reflects their lack of due diligence, and therefore, this evidence cannot meet the second prong of Fed. R. Civ. Pro. 60(b)(2).

---

[8] *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (citing *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Corp.,* 833 F.2d 208, 211 (9th Cir. 1987)).

[9] *Fantasyland Video, Inc. v. Cty. of San Diego*, 505 F.3d 996, 1005 (9th Cir. 2007) (citing *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981)).

[10] Dkt. #83 at 10:20-24.

[11] Dkt. #83 at 7:1-8.

[12] Dkt. #62-6.

[13] 2015 U.S. Dist. LEXIS 142532 (D. Nev. Oct. 19, 2015).

[14] 2015 U.S. Dist. LEXIS 30738 (D. Nev. Mar. 10, 2015).

Defendants further contend that "the March 2018 investigation was the first enforcement action in SNRHA history" and that "SNRHA would have allowed corrective action to be taken while continuing to pay under the existing HAP Contract."[15] Both these events, however, occurred after the Court ordered partial summary eviction in January 2018, and thus, it would not constitute newly discovered evidence because it did not exist at the time of the Court order.

In addition to failing the first two prongs of the Fed. R. Civ. Pro. 60(b)(2) test, none of the new evidence changes the disposition of the case in any way. Defendants mistakenly keep pointing to the corrective notice issue during the *contract period*, when instead, the Court found the materiality issue hinged on representations made during the *contract formulation*:

> At issue, however, is whether the SNRHA would have entered into the original lease absent Galliano's representations that it would reduce the rent to $994, would not seek to collect the difference caused by the reduction, and would not charge or collect rent in addition to the $994. The undisputed evidence is that the SNRHA would not entered into the HAP contract. Accordingly, the Court finds that not only did Galliano's statements and conduct cause the government to pay money, but those representations were material in causing the government to pay money.[16]

Therefore, none of the evidence satisfies the third prong of the Fed. R. Civ. Pro. 60(b)(2) test because none would change the disposition of the Court's order.

B.   *ESCOBAR* AND MATERIALITY

New evidence of SNRHA's conduct also does not change the analysis under the United States Supreme Court case of *Universal Health Servs., Inc. v. United States ex rel. Escobar*.[17] Defendants cite *Escobar* in arguing the behavior of SNRHA demonstrated the illegal side payments were not material to SNRHA's decision to pay. On the contrary, the opposite is true.

---

[15] Dkt. #83 at 10:20-11:2.

[16] Dkt. #66 at 14:1-7.

[17] 579 U.S. ___, 136 S. Ct. 1989 (2016)

6

Since the Court's order was brought to the attention of SNRHA, Defendants admitted that SNRHA investigated all Defendants' other HAP Contracts with Defendants and found 15 other instances of illegal side payments (or as Defendants innocuously discount as "inadvertent overcharges").[18] Defendants further admitted the investigation by SNRHA resulted in Defendants paying back thousands of dollars to Defendants' other Section 8 tenants.[19] SNRHA's conduct complies with federal regulations and the HAP Contract between SNRHA and Defendants:

> The owner may not demand or accept any rent payment from the tenant in excess of the tenant rent as determined by the PHA. The owner must immediately return any excess payment to the tenant.[20]

In sum, SNRHA found out about Defendants' fraudulent conduct in this matter, conducted an investigation of Defendants, found more violations by Defendants in other matters, and obtained the remedies available under the HAP Contract—this behavior by SNRHA is exactly what the law demands.

Defendants fault SNRHA for failing to terminate the HAP Contracts and stopping payments after SNRHA found 15 more instances of illegal side payments by Defendants, but the HAP Contract provides a public housing authority (PHA) like SNRHA with a variety of remedies when Section 8 landlords like Defendants are in breach:

> The PHA's rights and remedies for owner breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract. The PHA may seek and obtain additional relief by judicial order or action, including specific performance, other injunctive relief or order for damages. Even if the family

---

[18] Dkt. #83 at 5:5-9.

[19] Dkt. #84-1 75-76.

[20] Dkt. #62-2 at 22: HAP Contract, Part C ¶ 5(f); *see also* 24 C.F.R. § 983.353(b)(3)(2014); 24 C.F.R. § 982.451(b)(4)(ii).

continues to live in the contract unit, the PHA may exercise any rights and remedies for owner breach of the HAP contract.[21]

In a just released decision, the 9th Circuit confirmed that a government agency can demonstrate compliance "requirements . . . are material without directly limiting, suspending, or terminating" payments upon discovery of violations.[22] Previously, the 9th Circuit stated that a government agency may not always enforce the maximum penalty for fraud in the interest of public policy.[23] Here, SNRHA probably had good cause not to terminate 15 residential leases at once: the low-income Section 8 tenants would have all been simultaneously been forced to relocate their homes and incur the costs of doing so through no fault of their own. Most importantly, Defendants have presumably stopped charging the illegal side payments upon the conclusion of the investigation after Defendants have cured the violations. Therefore, SNRHA probably does not want to terminate residential leases if the Section 8 tenants are satisfied, and SNRHA does not need to stop payments to Section 8 landlords who have cured the violations.

Defendants also allege newly discovered evidence that "SNRHA routinely refused to enforce violation of 'side payment' prohibition"[24] to conclude, "Given the absence of past enforcement actions, it necessarily follows that Golden River could not have known that noncompliance was material at the time of Relatrix's lease in this case."[25] Defendants cite 2 examples of strong evidence against materiality from *Escobar*.

First, the *Escobar* court states, "[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong

---

[21] Dkt. #62-2 at 19: HAP Contract, Part B ¶ 10(c)-(e).

[22] *United States ex rel. Rose v. Pjh Stephens Inst.*, 2018 U.S. App. LEXIS 23977, at *25 (9th Cir. Aug. 24, 2018).

[23] *United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 906 (9th Cir. 2017), *petition for cert. filed*, 138 S. Ct. 1585 (U.S. Dec. 26, 2017) (No. 17-936);

[24] Dkt. #83 at 10:20-24.

[25] Dkt. #12 at 21-24.

evidence that those requirements are not material."[26] Defendants, however, cite no evidence whatsoever to suggest SNRHA knew about Defendants' particular fraudulent conduct in charging illegal side payments prior to Relatrix litigating this action. Nowhere in the deposition of Brenda Fonseca, the person most knowledgeable for SNRHA, on August 5, 2016, did the deponent state SNRHA knew about the illegal side payments committed by Defendants.[27]

Second, *Escobar* states, "[I]f the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.[28] There is no evidence whatsoever to suggest SNRHA had actual knowledge which of the over 4,000 different Section 8 landlords are charging illegal side payments in violation of which of the approximately 10,000 separate HAP Contracts administered by SNRHA.[29] Defendants cite instances where SNRHA may have neglected to investigate other fraudulent Section 8 landlords,[30] but SNRHA ignoring the reports by Nevada Legal Services regarding illegal side payments is not dispositive that SNRHA had actual knowledge of the illegal side payments; after all, Nevada Legal Services is an advocate for tenants and not an objective third party. This Court decides whether Section 8 landlords like Defendants committed fraud, not Nevada Legal Services. As Defendants confirm, SNRHA is now addressing the problem based on this Court's determination of fraud by Defendants.[31] In the single other instance cited by Defendants where SNRHA knew about the illegal side payments, Defendant's own citation demonstrated SNRHA

---

[26] *Escobar*, 136 S. Ct. at 2003-04.
[27] Dkt. #62-6.
[28] *Escobar*, 136 S. Ct. at 2003-04.
[29] SNRHA Southern Nevada Regional Housing Authority: *Housing Choice Voucher Department*, http://www.snvrha.org/housing-choice-voucher-dept.htm.
[30] Dkt. #83 at 7:10-17.
[31] Dkt. #83 at 6:5-18.

changed its policy to correct the problem after a SNRHA employee erroneously approved an illegal side payment.[32] Therefore, there is no evidence that SNRHA had actual knowledge of the violations when regularly paying other Section 8 landlords like Defendants, and the one instance actually known to SNRHA resulted in a policy change.

Beyond SNRHA, the United States Government enforces the prohibition of illegal side payments against Section 8 landlords like Defendants. In fact, our local U.S. Attorney General's office initiated an enforcement action against a local Section 8 landlord for charging illegal side payments in 2016.[33] U.S. Attorney General's offices nationwide have also conducted similar enforcement actions.[34] Furthermore, Office of the Inspector General, Department of Housing and Urban Development issued the following notice in 2018:

> Improperly requiring tenants to pay rent in excess of what is authorized by the applicable HAP contract represents both an actionable offense under the False Claims Act and deplorable behavior directed towards the very persons whom the HCV program was designed to serve. (Additionally, depending on the intent, such an action may qualify as a criminal offense under 18 U.S.C. 287, 1343, etc.) OIG will not tolerate such conduct, and rather will cooperate with efforts to bring offending landlords to justice and to remedy their wrongs.[35]

---

[32] Dkt. #83 at 7:22-27.

[33] *United States v. Stonegate Real Estate Service, Inc.*, Case No. 16-cv-02391 (D. Nev. Filed October 13, 2016).

[34] *See e.g. United States ex rel. Wade v. DBS Invs., LLC*, 2012 U.S. Dist. LEXIS 122734 (S.D. Fla. Aug. 29, 2012); *United States ex rel. Nevins v. Nannan et. al.*, Case No. 16-CV-11788 (D. Mass. Filed Sept. 2, 2016); *United States ex rel. Murray v. Edlich*, et. al., Case No.13-sc-845 (D.C. Minn. Filed Apr. 11, 2013); *United States ex rel. Newberry v. Horton*, Case No. 11-cv-20153 (S.D. Fla. filed Jan. 14, 2011); *United States ex rel. Madden v. Henderson*, Case No. 15-cv-00195 (E.D. Cal. Filed Dec. 10, 2015) (U.S. government intervened for settlement purposes); Department of Justice, U.S. Attorney's Office, Southern District of Florida: *United States Resolves False Claims Act Investigation Against Landlord Charging Housing Voucher Tenants Excess Rents* (Aug. 15, 2018), https://www.justice.gov/usao-sdfl/pr/united-states-resolves-false-claims-act-investigation-againstlandlord-charging-housing.

[35] HUD OIG Fraud Alert: Bulletin on Charging Excess Rent in the Housing Choice Voucher Program, 73 Fed. Reg. 39712, 39713 (July 10, 2008).

The Notice concluded by states, "OIG is aware of numerous similar examples of this sort of egregious conduct nationwide," and sought information from the public.[36] Therefore, even if the local SNRHA did not previously take enforcement actions, the U.S. Government certainly did.

Finally, Defendants argue that they could not have possibly known that "noncompliance is material between 2013-2015 because SNRHA did not enforce such complaints of 'side payment' violation."[37] Regardless whether SNRHA previously investigated illegal side payment claims, the overwhelming evidence show SNRHA provided ample warning to Defendants not to charge illegal side payments:

    a. Defendants signed the "Reduction of Rent Acknowledgement" where Defendants specifically agreed, "no additional rent is to be collected from [Relatrix] (Side Payment)," and that "if it is discovered that additional rent is being collected from the tenant, the Housing Assistance Contract (HAP) will be terminated."[38]

    b. Defendants signed the HAP Contract with SNRHA where Defendants certified not to charge additional rent, otherwise known as side payments, and agreed to immediately return any excess rental payments.[39]

    c. SNRHA provided Defendants with the initial "Notice of Rent Payment and Program Abuse Warning Information" where SNRHA explicitly stated the following about side payments:

> The owner may not accept any other monies from the client. Requiring extra ('side') payments in excess of the family's share of rent as listed above is considered program fraud. In the event that SNRHA determines that the family has made side payments to the owner, SNRHA will require the owner to repay the

---

[36] *Id.*

[37] Dkt. #83 at 12:14-18.

[38] *Id.*

[39] Dkt. #62-2 at 19: HAP Contract, Part B ¶ 8(d); Dkt. #62-2 at 22: HAP Contract, Part C ¶ 5(e)-(f) and ¶ 6(c).

excess monies to the family; and both the owner and the family will be terminated from the Housing Choice Voucher Program participation.[40]

Therefore, Defendants knew or should have known not to charge illegal side payments and the consequences from SNRHA for doing so.

### C.   FRAUD, MISREPRESENTATION, OR MISCONDUCT

"To prevail [under Fed. R. Civ. Pro. 60(b)(3)], the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense."[41] Fed. R. Civ. Pro. 60(b)(3) "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect."[42]

Defendants accuse fraudulent conduct or misrepresentations by Relatrix's attorney for alleging SNRHA would terminate the HAP Contract and bar Defendants from the Section 8 program for illegal side payments despite "knowing that SNRHA's 'actual or likely' response conflicts with his interpretation of the contract and rules as to SNRHA's normative behavior."[43] The arguments by Relatrix's attorney, however, came from direct citations, not interpretations of the contract or rules:

    a.   Under the HAP contract and federal regulations, Defendants certified they would not charge additional rent, otherwise known as side payments.[44]

    b.   The HAP Contract, federal regulations, the HUD Guidebook, SNRHA's Administrative Plan and the SNRHA Owner's Guide all prohibit the owner from

---

[40] Dkt. #64-1 at 2.

[41] De Saracho v. Custom Food Mach., Inc., 206 F.3d 874, 880 (9th Cir.2000).

[42] In re M/V Peacock, 809 F.2d 1403, 1405 (9th Cir. 1986).

[43] Dkt. #83 at 13:9-15.

[44] Dkt. #62-2 at 19: HAP Contract, Part B ¶ 8(d); 24 C.F.R. 983.209(g) and (h) (2005).

charging additional fees above the rent, otherwise known as side payments, and
demand that the owner must immediately return any excess payment to SNRHA.[45]

c. SNRHA policy specifically states, "Accepting side payments shall result in
termination of the HAP Contract."[46]

d. The HAP Contract states that Defendants do not have a right to receive payments
under the HAP Contract unless the owner has complied with all its provisions.[47]

e. Federal regulations, SNRHA's policy and the SNRHA Owner's Guide bar
fraudulent owners from future participation in the Section 8 program.[48]

Therefore, Relatrix's attorneys accurately represented SNRHA's authority to terminate the HAP
Contract and bar Defendants from the Section 8 program.

SNRHA's failure to investigate reports from Nevada Legal Services in prior illegal side
payment matters to confirm fraudulent conduct by other Section 8 landlords is not evidence that
SNRHA actually knew of fraud to enforce its remedies. Perhaps SNRHA lacks the resources to
investigate every claim or start lawsuits against Section 8 landlords with deep pockets—
Defendants never bothered to ask SNRHA during discovery. As Defendants' own citation
demonstrates, SNRHA demanded advocates like Nevada Legal Services first prove the fraud in
court.[49] Nevada Legal Services has only done so once before in the Court prior to this case: in

---

[45] Dkt. #62-2 at 22: HAP Contract, Part C ¶ 5(d)-(f); 24 C.F.R. 983.209(g)-(h); 24 C.F.R.
983.353(b)(2)-(3); 24 C.F.R. 982.451(b)(3)-(4); Administrative Plan for the SNRHA Housing
Choice Voucher Program, Section 9-I.E., Page 9-8; Dkt. #42-5.
[46] Administrative Plan for the SNRHA Housing Choice Voucher Program, Section 9-I.E., Page
9-8
[47] Dkt. #18-4, Part B ¶ 7(b).
[48] 24 C.F.R. 982.306(c)(2) (2007); Administrative Plan for the SNRHA Housing Choice Voucher
Program, Section 13-I.D., Page 13-5 to 13-6; Exhibit E, 4-6 and 20-21.
[49] Dkt. #83 at 7:10-18.

*United States ex rel. Holmes v. Win Win Real Estate, Inc.*[50] Therefore, Defendants have provided no evidence SNRHA has a history of ignoring court determinations of fraud, especially not enough evidence to accuse Relatrix's attorneys of hiding facts that Defendants could have easily obtained via discovery.

V.   **CONCLUSION**

The newly discovered evidence of SNRHA's conduct subsequent to the Court order fails to meet the requirements of Fed. R. Civ. Pro. 60 because the evidence did not exist prior to the Court order and would not be dispositive in this matter. Information from the Las Vegas Review Journal article were known or should have been known to Defendants, and even if not, could have been obtained during discovery but for Defendants' lack of due diligence. Therefore, the Court Order from January 26, 2018 should stand.

DATED this 24th day of August 2018.

Respectfully Submitted,

/s/ Ron Sung
RON SUNG, ESQ.
Nevada State Bar No. 13047
I. KRISTINE BERGSTROM, ESQ.
Nevada State Bar No. 10841
Nevada Legal Services, Inc.
530 South 6th Street
Las Vegas, Nevada 89101
(702) 386-0404 x148
Facsimile (702) 388-1641
*Attorneys for Norma Arias Benitez*

---

[50] 2015 U.S. Dist. LEXIS 142532 (D. Nev. Oct. 19, 2015).

## <u>CERTIFICATE OF MAILING</u>

     I hereby certify that on this 24th day of August 2018, I served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT** in the following manner:

     (ELECTRONIC SERVICE) Pursuant to Fed. R. Civ. P. 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Yanxiong Li, Esq.
WRIGHT, FINLAY & ZAK, LLP
7785 West Sahara Avenue, Suite 200
Las Vegas, NV 89117
yli@wrightlegal.net
*Attorneys for Defendant Golden River Investments, LLC*

Robert Hernquist, Esq.
Wade B. Gochnour, Esq.
HOWARD & HOWARD ATTORNEYS PLLC
Wells Fargo Tower, Suite 1000
3800 Howard Hughes Parkway
Las Vegas, Nevada 89169-5980
rwh@h2law.com
wbg@h2law.com
*Attorneys for Defendant Galliano, LLC*

     (UNITED STATES MAIL) Pursuant to Fed. R. Civ. P. 5(b)(2)(C), the above-referenced document was mailed in a first class, postage-paid envelope to the following:

Troy Flake
U.S. Attorney's Office
333 Las Vegas Boulevard South
Suite 5000
Las Vegas, NV 89101

                                  /s/ Ron Sung
                                  An Employee of Nevada Legal Services